The eighth case for this morning is Cervantes v. Ardagh Group. Mr. Rubenstein. Thank you, Your Honor. May it please the Court, my name is David Rubenstein and I represent Juan Cervantes in this case. What we have here, Your Honors, is a situation where we have an employee who worked for a company called Ardagh Group. He was an employee there for over 20 years working in their electromagic division. In June 2015, he was hospitalized as a result of a diabetes issue. He came to work two days later because he was dedicated to work, worked a full eight-hour shift, and then was approached by one of his lower junior advisors to ask if he could work a second shift. He said, no, I cannot work a second shift, I'm lucky I'm basically here at all, and said that he can't work a second shift. He turned in his radio, but then he saw that his father, who was also working at the company for almost 50 years now, was still working to fix a machine. So let me ask you a question. Yes. I understood from your opponent's brief that even though he may have turned his radio in and so forth, that he was, in fact, still on the clock for pay purposes during the time he's helping his father fix the other machine. Is that correct? No, Judge. He turned in his clock and he had no intention of earning extra money for working the extra shift. So is this a misunderstanding? They thought he was on the clock? Because certainly if he was on the clock, then the action of the other supervisor, wanting him to perform a different task, would be quite understandable. If he's not on the clock, if he's just kind of hanging out at the shop, I don't know whether people are allowed to do that, but at least there's not a pay issue. Correct. He wasn't hanging out just to talk shop. He was hanging out because he was assisting his father in fixing the machine. No, I'm saying, but does the company let people stay on the work, in the active work areas, when they are not on the clock? That would be an issue for the company, but in terms of... No, we don't have any evidence on that issue. However, we do have evidence that says that he told the supervisor that he was staying a little extra to help his father. She said, okay. She left. An hour later, she comes back. She says, you're still here. He says, yes, I'm still here helping my father. He's my ride home. And she said, you can't be here. You need to leave. So he walks off away and goes to the back area. They finish up. He goes home. Two days later, he's now being determined that he's being fired, fired for insubordination. So can I just direct your attention? This is the bottom of page 9 and the top of page 10 of your opponent's brief. Yes. They state on the date of the incident, that's this whole thing we're talking about, Cervantes remained clocked in and was paid by Arda until 10.45 p.m., 6.75 hours beyond the end of his shift. Then there's his citation. And even though he was on the clock and being paid, he refused work assignments from the shift supervisor. Another citation. So are you just saying that this is wrong? Yes, we dispute that, Judge. And there are a litany of material facts that are disputed on this case that we believe should have precluded summary judgment on this record. But the key issue, which was why we're here, is because Judge Guzman never dealt with the substance of the case. He never dealt with the material facts that we believe are in dispute, the allegations of racial discrimination that we allege here. Because when we have someone who's a dedicated worker for 20 years, staying extra to work after he'd been hospitalized, and then he's now being fired for no reason that made sense to me or them or anybody else, we then look back at what are the pretexts as to what was really going on. Are you getting around to the scope of the charge problem that he has? Yes. And what we have here is an issue where when Mr. Cervantes went to the EEOC to file his claim, he checked the wrong box. He checked the box that instead of saying racial discrimination was the reason he was alleging this, he checked the box saying retaliation. Now, Mr. Cervantes, as the court is aware, is not an attorney. He's a layperson. He's a factory worker. And the Seventh Circuit has routinely held that liberal standards are given to pro se litigants who are filling out the EEOC forms because they're not an attorney. They're not sufficient to draft legal pleadings. And so when he's explaining what's going on and he says that he was discriminated against in his complaint, he checked the wrong box. And for that reason alone, Judge Guzman rejected that claim. However, there's a litany of Seventh Circuit cases which state that we cannot look at this just in a narrow view, but we have to look at the totality of the situation. But retaliation focuses on an act that punishes you, basically, for doing something protected like filing an internal complaint or filing the EEOC charge or a state charge or what have you. Discrimination is different. And part of the reason for the charge requirement is so that the EEOC can go through the proper conciliation proceedings. And if it's trying to conciliate a retaliation claim, it doesn't have the ability and the employer doesn't have the ability to bring forth evidence that might be relevant to a discrimination claim. It's just there's a mismatch. Correct. But the Seventh Circuit has held it. We haven't said there's no difference between them. There are some times with some facts where you can see that the scope of a charge really encompasses some related activity. But it's a question for each case. Correct. But where there are cases where these facts are related and intertwined in time, people, and substance, as the court in Sitar versus in the Department of Transportation, Seventh Circuit 2003 held, that is a situation where the court will look liberally at whether the box was checked by the right person and look to the substance of the facts. In the investigation process, Juan Cervantes was interviewed, talked about the discrimination based on racial grounds. And then a questionnaire was sent to us, at which point he had hired me. We sent a letter responding to all the issues of the questionnaire, explaining the merits of the claim, the analysis of the claim. And we said in the letter, Cervantes' previous complaint to supervisors of discrimination and harassment as a result of his ethnic background. This led to core job warnings, which he was filing grievances with the union. And then he was retaliated against beyond that. Under paragraph ZZ1, he said, yes, because of his race, decision makers of the company refused to promote him. There is a conscious element in this case regarding RDOG and the supervisors who are African American, who treat non-African American employees differently than the other ones. When we look at the substance of everything going on here, the facts, the time, the place, the substance are all the same. And so the department was put on notice of these allegations. They chose to ignore them. We provided the department with six witnesses to corroborate these stories. They didn't contact a single one. You didn't actually file an amended charge, though, right, with all the bright boxes? We didn't file an amended charge, Judge. We have a concern about notice to the other side. Understood. When we talk about notice to the other side, I never received any of the exhibits or respondent exhibits that they supplied either. The way the department worked was they sent letters to me and interviewed us privately. We responded to those questions. They reached out to the defendants. They spoke with them, responded to their exhibits. I never saw their exhibits. It was a very almost isolating type of investigation. I'll remain. You can save the rest. Thank you. Mr. Mead. May it please the Court, Brian Mead on behalf of the Apelli Ardagh Group in this case. I'm requesting that this Court uphold the two rulings on summary judgment in favor of Ardagh. On the first ruling, the district court did not err in holding a summary judgment that plaintiff's race and national origin discrimination claims could not be raised in the lawsuit because they were not originally raised in the underlying administrative charge. Initially, both Title VII and the Illinois Human Rights Act generally bar raising issues in a lawsuit that are not raised with the underlying administrative agency. Here, looking at plaintiff's charge shows that he did not simply forget to check the proper box. Instead, what that shows is that he checks the retaliation box. If you look at Record on Appeal, page 14, that he alleges he was demoted in retaliation for a family member filing an EEOC charge 17 years prior to the adverse action at instance here. He claims that a family member filed that charge in 1998 and that he was demoted in 2015. Similarly, the Illinois Department of Human Rights investigation report for this case has no mention whatsoever of race or national origin discrimination. Instead, it analyzes discipline, harassment, and demotion all in relation to the retaliation claim. What we're left with legally is that this Court's case law, and the case law that the district court properly relies on in this case, is clear that when retaliation is the underlying charge with the administrative agency, that is the only charge that can be raised with the follow-up complaint. Opposing counsel cited to the Sitar v. Indiana Department of Transportation case, I agree that that is a case that is emblematic of what this Court should rule in this case. That's a Seventh Circuit decision from 2003. In Sitar, the plaintiff checked only the retaliation box, as the plaintiff did in this case, and then later sought to bring a sex discrimination and sexual harassment charge in the follow-up lawsuit. This Court affirmed the district court's ruling and said that though the sexual discrimination and sexual harassment case claims could not be raised because only retaliation was raised with the administrative agency. Here, plaintiff's charge is nearly identical to the charge in Sitar, and permitting plaintiff to add in this lawsuit national origin and race discrimination claims when the charge makes no mention whatsoever of that would run directly contrary to the Sitar case. There was a mention of the ex parte letter sent by Mr. Cervantes' counsel to the Illinois Department of Human Rights, and I'd like to make just a few points on that. Factually, the letter was never communicated to ARDA. Again, it was an ex parte letter. You were not copied on that letter. We were not copied on that letter. That's correct, Your Honor. And what it does is it makes the conclusory allegation under a heading titled retaliation that plaintiff had been discriminated against on the basis of his race, and it says that he was not promoted to a day shift position on the basis of his race. That's all the letter says. It's important to understand factually that the day shift promotion relates to a 2012 incident. That is legally time barred, and this Court does not have to resolve that issue in this case because it was not raised within the 300-day statute of limitations. That's set forth on Record of Appeal, pages 74 to 79. Legally, also, an ex parte communication to an agency is not sufficient to enlarge the set of claims that an individual can raise outside of the administrative charge. The District Court was, again, correct in its analysis of this issue in looking at the O'Rourke v. Continental Casualty Company case from 1993. There, the Court pointed out that the claim the plaintiff sought to add in the complaint was time barred, as it is here. The Court also recognized that in order to enlarge issues to be raised in a lawsuit, they actually have to be implied in the underlying charge and then also communicated to the employer in the course of the investigation in order to enlarge those claims open to litigation. Here, neither of those things happened. The charge has no implication whatsoever of race or national origin discrimination. I think that's clear if you're looking at the allegations in the charge. And none of those issues were ever actually communicated to Arda. Arda was never put on notice, for example, that he was claiming that African Americans were treated any better than non-African Americans at the plant. So we do have a notice issue, as I believe Your Honor observed. Turning to the second ruling for the District Court in this case, which is the summary judgment on the actual retaliation charge, it's our position that that was correct for at least two reasons. First, Mr. Cervantes did not engage in statutorily protected activity. And second, that there was a legitimate non-discriminatory reason based on the record submitted to the court for his demotion in 2015. So I'll start with the statutorily protected activity. Mr. Cervantes originally claimed that his protected activity in the IDHR charge was a family member filing an ELC charge in 1998. He has waived that issue. It wasn't raised in his summary judgment response brief. It wasn't raised in his brief before this court. So that cannot form the basis of protected activity. Instead, what he asserts, without any sort of citation to the record, is that he had vaguely complained to superiors of discrimination on the basis of his Hispanic background. He actually gave deposition testimony in direct contradiction to that assertion when he said that he only ever raised concerns with the union president and not to any RDOM managers or supervisors. That's set forth on Record of Appeal, page 31. That forecloses the idea that anyone at ARDA had knowledge of a protected activity in order to actually retaliate against him. Even ignoring the deposition admission, Mr. Cervantes' vague references to complaints to superiors about discrimination are legally insufficient to survive summary judgment. Again, the district court was correct in analyzing this. It relied on the King v. Ford Motor Company decision from 2017. There, the court said, in a retaliation protected activity case, that summary judgment should be granted when the only allegation set forth to the court or the record of evidence is speaking in sweeping terms with generalities and no real level of detail as to what the underlying protected activity was and then how that connects to the adverse action at issue. Here, the district court correctly notes that Cervantes did not identify what evidence supports the complaint to the superiors, when that took place, who he complained to, and then linked that with a but-for causation standard as to how he was discriminated against for the adverse action, who made that action, and when it took place. Second, turning to the legitimate non-discriminatory reason for his demotion in this case, it is undisputed from the record evidence, and this is Mr. Cervantes' own deposition testimony, that he stayed clocked in and continued to be paid after his regular shift had ended, that his supervisor attempted to contact him to assign work to him, and that he did not respond to that radio call because he did not have the radio on him, and that upon being instructed by his supervisor to leave the facility, he did not leave the facility. On that basis, RDOG demoted him in 2015, and we believe that that is the legitimate non-discriminatory reason in order to take that adverse action. For these reasons, the district court was correct in granting summary judgment to RDOG on the retaliation claim, and with that, if the court has no further questions, we will rest on our briefs. I see none, so thank you. Mr. Rubenstein. Thank you, Your Honor. I would briefly steer the court towards the cases of Flores v. Board of Trustees, Northern District, Illinois, 2015, as well as the Whitehead v. American International, Inc., Northern District of 1994. Both of those cases deal with these exact issues, situations where a litigant who is a pro se person checks the wrong box, and then is bringing up a complaint after the fact that doesn't relate directly to that box that's checked. Both of those cases found in those situations that the litigant was afforded the ability to proceed on his complaint in issues outside the box being checked because the court looks at a liberal view of the overall understanding of what we're trying to do here. The goal of this EEOC process is not to prevent litigants from getting their rights. It's not to foreclose upon them the ability to affirm what they're trying to do. The goal is to provide a streamlined process to help litigants get the relief that they deserve. We have injustice here that's taken place. We have a supervisor who lied under Oath 10th about ever being disciplined, their key witness, and then in discovery they revealed that she'd been written up 10 different times. There are six different disputed issues of material fact on this case. There were four declarations that we presented to the court of evidence of disparate treatment and prejudice. For Judge Guzman to simply state that we're not going to even look at any of this other thing because the wrong box was checked is a disservice to this court and to the system. We respectfully request that the court reverse this decision, remand it to the proceedings so that the case can proceed. Thank you. All right, thank you very much. Thanks to both counsel. We will take the case under advisement, and the court will take a brief recess before the final case of the day.